**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**GOODNIGHT TERMINAL SERVICES, INC. and WILLIAM BUCKLEY** — **PLAINTIFFS**

**v.** — **Civil No. 1:24cv306-HSO-BWR**

**ASG CHEMICAL HOLDINGS, LLC A/K/A ASG CHEMIE** — **DEFENDANT**

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT ASG CHEMICAL HOLDINGS, LLC'S MOTION [70] TO TRANSFER VENUE TO THE SOUTHERN DISTRICT OF TEXAS**

Defendant ASG Chemical Holdings, LLC seeks a transfer of venue of this case to the United States District Court for the Southern District of Texas. *See* Mot. [70]; Mem. [71]. Plaintiffs oppose the Motion [70]. *See* Resp. [107]; Mem. [108]. Defendant's Motion [70] should be granted.

## I. BACKGROUND

This case arises out of a failed business relationship between Plaintiffs Goodnight Terminal Services, Inc. ("GTS"), a Mississippi corporation that provides a number of transloading and distribution services; William Buckley ("Buckley"),[1] the General Manager of Bisley International, LLC ("Bisley"), a material supply company and non-party to this suit; and Defendant ASG Chemical Holdings, LLC a/k/a ASG Chemie ("ASG" or "Defendant"), a limited liability company that provides consulting and marketing services. *See generally*, Second Am. Compl. [33] ("SAC").

[1] GTS and Buckley are collectively referred to as "Plaintiffs."

According to Plaintiffs, non-party Bisley "contracted with ASG to help Bisley grow in the lithium market." *Id.* at 2. To do this, Bisley entered into a Marketing Cooperation Agreement [33-1] with ASG in November 2019. Dkt. [33-1].

Plaintiffs claim that in 2019, Jeff Koebrick, an ASG employee, contacted Gary Mackey, the Chief Executive Officer of GTS, and told him that "ASG was working on behalf of an Australian company, Bisley, that needed a warehouse in the United States." SAC [33] at 3. After discussion, "GTS entered into an agreement with Bisley for storage at [GTS's] Hancock County [Mississippi] Warehouse," laying the "foundation for GTS's business relationship with ASG/Bisley." *Id.* at 4.

Plaintiffs allege that, at some unspecified time, "ASG began paying Bisley employees to act against Bisley's—and by extension, Plaintiffs'—interests." *Id.* at 8. And they claim that Ken Pryde, Bisley's Operations Vice President, was "on board by then." *Id.* Plaintiffs assert that on February 1, 2022, Pryde—acting without authority (though Plaintiffs allege no facts explaining how they know that to be true)—emailed ASG a document releasing ASG from its non-compete agreement with Bisley. *Id.* And in January 2023, after GTS spent money expanding into Houston, Texas, under an agreement with Bisley, Pryde allegedly informed Mackey that he was leaving Bisley to spend more time with his family. *Id.* at 6, 9.

After Pryde resigned from Bisley, Plaintiff Buckley interviewed for and was hired as Bisley's General Manager. *Id.* Buckley claims that ASG interviewed him for the Bisley position and represented that "ASG served as a contract sales and marketing arm of Bisley." *Id.* According to Plaintiffs, once Buckley was hired, ASG

"attempted to persuade Buckley to purchase more silicate products for Bisley," even though Bisley already had "metric tons of the material" in GTS warehouses. *Id.* at 10. Then, ASG allegedly "offered to set up a separate income stream for Buckley by selling chemical products in the coatings and construction agency, through ASG," which Buckley, assertedly, rejected. *Id.* Plaintiffs claim that this is when they learned for the first time—despite Pryde's email on February 1, 2022, releasing ASG from the non-compete agreement—that ASG was competing with Bisley. *Id.*

Plaintiffs broadly allege that ASG and its employees were part of a conspiracy to undermine Bisley's business interests. *See generally* SAC [33]. They aver that ASG stole Bisley inventory from GTS's Hancock County warehouse, *id.* at 7-8, and diverted business and all of Bisley's and their own inventory away from the GTS warehouse, harming Plaintiffs' contracts and business relationships, *id.* at 12, 14. Plaintiffs also assert that ASG "began telling Buckley's customers that Bisley" was going out of business, *id.* at 11, that Bisley "requested confidential formulations and cost information from Buckley," *id.* at 12, and that Claudio Manissero and Jeff Koebrick, both representatives of ASG, "began 'poisoning the well' for Plaintiffs with Bisley's CEO," by claiming that "Buckley was not working or communicating with ASG," statements that Plaintiffs claim negatively impacted Buckley's employment relationship with Bisley, *id.* At bottom, Plaintiffs' claims in this case derive from ASG's alleged efforts to drive non-party Bisley out of business.

Plaintiffs brought this suit in state court in August 2024, advancing eight claims against ASG and two individual defendants. *See* State Compl. [1-1]. The

case was removed to this Court on October 7, 2024. *See* Notice of Removal [1]. After granting in part and denying in part three Motions [5], [26], [34] to Dismiss, *see* Ords. [21], [32], [53], the only remaining Defendant is ASG, and the only claims remaining are Plaintiff GTS's tortious interference with contract claim (Count I) and tortious interference with business relations claim (Count II), and Plaintiff Buckley's tortious interference with employment contract claim (Count I), *see* SAC [33] at 13-18; Ord. [53] at 20. Defendant now asks the Court to transfer this case to the United States District Court for the Southern District of Texas, citing the "first-to-file rule" and 28 U.S.C. § 1404(a). *See generally* Mem. [71].

## II. DISCUSSION

### A. Applicable Law

"The Fifth Circuit adheres to the general rule that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). "The 'first to file' rule is grounded in principles of comity and sound judicial administration," *id.*, and "[t]he concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result," *id.* (quoting *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729 (5th Cir. 1985)). "When related cases are pending before two federal courts, the first-to-file rule instructs the court with the later-filed action to transfer it to the first-filed forum." *White v. Peco Foods, Inc.*,

546 F. Supp. 2d 339, 341 (S.D. Miss. 2008); *see also Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). To determine whether the first-to-file rule applies to a case before it, the later-filed court considers merely whether the issues between the two federal actions "might substantially overlap." *Cadle*, 174 F.3d at 606. The issues and parties need not be identical. *See Save Power*, 121 F.3d at 950-51. Courts must also determine whether sufficiently compelling circumstances exist to avoid the rule's application. *Igloo Prods. Corp. v. The Mounties, Inc.*, 735 F. Supp. 214, 217 (S.D. Tex. 1990); *see also Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971).

Separately, a transfer of venue can be based on 28 U.S.C. § 1404(a). *See White*, 546 F. Supp. 2d at 343 (noting that the first-to-file rule and venue transfers under § 1404(a) depend on separate grounds). Under § 1404(a), a court may transfer a civil action "[f]or the convenience of parties and witnesses, in the interest of justice," to any district where it "might have been brought," 28 U.S.C. § 1404(a), if the movant shows that the transferee venue is "clearly more convenient than the venue chosen by the plaintiff," *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc). In conducting that analysis, courts assess:

> (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; (4) all other practical problems that make trial of a case easy, expeditious and inexpensive; (5) the administrative difficulties flowing from court congestion; (6) the local interest in having localized interests decided at home; (7) the familiarity of the forum with the law that will govern the case; and (8) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law.

*In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (citation and internal quotation marks omitted). No single factor is dispositive. *In re Media Matters for Am.*, 187 F.4th 362, 370 (5th Cir. 2026). One consideration under the fourth § 1404(a) factor is whether the motion was filed with "reasonable promptness." *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989); *see also Media Matters*, 187 F.4th at 370 (explaining that "reasonable promptness" is a consideration under the fourth factor). "[A] motion to transfer under § 1404(a) can be filed at any time, so long as the motion is made with reasonable promptness." *Brown v. Federated Cap. Corp.*, 991 F. Supp. 2d 857, 860 (S.D. Tex. 2014); *see also Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 760 (E.D. Tex. 2000) (opining that there is no "reasonable promptness" if the delay in bringing the § 1404(a) motion was a "dilatory tactic" or "prejudiced" the opposing party).

B. Analysis

1. Venue-transfer is warranted under the first-to-file rule.

ASG submits, first, that this case should be transferred to the Southern District of Texas under the first-to-file rule because of its substantial overlap with a case it previously filed there, *ASG Chem. Holdings, LLC v. Bisley Int'l, LLC*, No. 4:23-cv-04333 (S.D. Tex.) (the "Texas Action"). Mem. [71] at 4-6. It is uncontested that the Texas Action was filed in November 2023, while this case was filed in Mississippi state court in August 2024 before being removed to this Court in October 2024, making the Southern District of Texas the first-filed court.

Two of the three remaining parties in this case, Plaintiff Buckley and sole Defendant ASG, are parties to the Texas Action; Buckley as a defendant and ASG as the sole plaintiff. *See generally ASG Chem. Holdings*, No. 4:23-cv-04333 (S.D. Tex.). Gary Mackey, a GTS employee and a plaintiff previously dismissed from this action for failure to state a claim, is a defendant in the Texas Action; and Claudio Maniserro and Jeff Koebrick, ASG employees and defendants previously dismissed from this action for lack of personal jurisdiction, are third-party defendants to the Texas Action. *Id.* Bisley International, LLC, a non-party to this case but to which many of the underlying facts in this case relate, is a party to the Texas Action as well. *Id.* And the Texas Action is premised on the same November 2019 business agreement that underlies this case. Dkt. [33-1]; *compare* Texas Action, First Am. Compl. [107] at 4. The facts underlying the Texas Action concern the same events and transactions that serve as the operative facts for this case, as described as background in this Order (but told from Defendant ASG's perspective as the plaintiff in the Texas Action). *See supra* at 1-4; *compare* Texas Action, First Am. Compl. [107]. Those same facts will thus determine the losses incurred and damages awarded in both this case and the Texas Action.

Specifically, ASG alleged in the Texas Action that: Bisley failed to meet its obligations under the November 2019 agreement; Bisley released ASG from their non-compete agreement; Bisley impermissibly used ASG's trademarks; and Buckley and Mackey interfered with ASG's business relationships. *See* Texas Action, First Am. Compl. [107] at 5-15. In the Texas Action, Bisley counterclaimed against ASG

for, among other things: conversion; unfair competition; trademark infringement; business disparagement; breach of contract; and tortious interference with existing and prospective contractual relations. *See id.*, First Am. Countercl. [36] at 38-77.

In support of its argument that this case and the Texas Action "substantially overlap," ASG asserts that: (1) as this case is solely about tortious interference with contracts and business relations that are downstream of ASG's dealings with Bisley, GTS's and Buckley's damages here are "derivative of Bisley's," a defendant in the Texas Action; (2) failure to transfer would subject the same non-compete release, inventory-theft, and business/inventory-diversion fact questions to separate rulings from two different courts;[2] and (3) Defendant ASG and Plaintiff Buckley are both parties in the Texas Action, and are each represented by the same counsel there as in this Court. *See* Mem. [71] at 5-6. Plaintiffs counter that GTS is not a party to the Texas Action, and that GTS and Buckley's specific claims here are not presented in the Texas Action. *See* Mem. [108] at 7-9, 10-11. But as the Court will discuss, Plaintiffs' contentions are not relevant arguments under the first-to-file rule.

Plaintiffs themselves acknowledge that "GTS's claims [against ASG] concern its contracts and business relationships with Bisley," *id.* at 7, but ASG's alleged interference with GTS's contracts and relationships concerns factual issues also being litigated in the Texas Action—and those factual issues are the sole basis of its remaining claims in this case. And as already stated, Buckley is an employee of

[2] *See supra* at 1-4; *compare, e.g.*, Texas Action, First Am. Countercl. [36] at 30, 38, 40, 47 (claiming ASG diverted business away from Bisley, calling Pryde's execution of a non-compete release "fraud" and "improper," stating that ASG "stole significant amounts of Bisley inventory," and asserting that ASG ordered mass amounts of sodium aluminate to Bisley to "destroy Bisley's cash flow").

Bisley, whose only remaining claim in this case involves ASG's alleged interference with his employment contract with Bisley, and both Buckley and Bisley are parties to the Texas Action, and the underlying factual substance of Buckley's claims here are being litigated in the Texas Action. The Texas Action includes Plaintiffs' factual disputes over the non-compete release, over alleged diversion/theft of business/inventory, and over whether ASG interfered with Bisley's contracts and business relationships—significant predicates to both GTS and Buckley's claims in this case.[3] *See generally ASG Chem. Holdings*, No. 4:23-cv-04333 (S.D. Tex.). Plaintiffs' Memorandum [108] constantly asserts that this case and the Texas Action are not "identical" or "indistinguishable," and that some issues in this litigation "remain unique" from the Texas Action, Mem. [108] at 7, 10, but that is not the test. Substantial overlap under the first-to-file rule does not require the parties and issues to be identical. *See Save Power*, 121 F.3d at 950-51. It is enough that all remaining claims in this case are derivative of fact issues that are currently being litigated, and will likely be decided, in the first-filed Texas Action.

Additionally, discovery has only just opened in this case, whereas discovery in the Texas Action concluded on August 31, 2026, and that court is currently considering competing summary judgment motions on several of the fact issues central to this case. *See* Texas Action, Dkts. [233], [276], [279], [288]. Failure to transfer this case would result in copious discovery duplicative of that which was already completed in the Texas Action. To that point, and further belying their

---

[3] It appears that GTS's claims in this case could have been asserted by intervening as a third-party defendant, and Buckley's claim could have been asserted as a counter-claim, in the Texas Action.

arguments against substantial overlap, on October 21, 2026, Plaintiffs noticed their intent to serve subpoenas in this case on twenty-one non-party entities, Dkt. [74], fourteen of which had been previously served against the same entities in the Texas Action by the same counsel, *see* Texas Action, Dkt. [244]. And all fourteen subpoenas had already been quashed in the Texas Action on September 10, 2026. *Id.*, Dkt. [268]. Such duplicative action highlights the substantial overlap in subject-matter, discovery, and witnesses between the two cases—precisely the kind of overlap the first-to-file rule was designed to prevent.

On review of the record, the Court finds substantial overlap between the two federal actions. By transferring this case to the Southern District of Texas, this Court will "avoid the waste of duplication, . . . avoid rulings which may trench upon the authority of sister courts, and . . . avoid piecemeal resolution of issues that call for a uniform result." *Save Power*, 121 F.3d at 950 (quoting *West Gulf Maritime*, 751 F.2d at 729). Plaintiffs have not proffered any compelling circumstances to obviate application of the first-to-file rule, and the Court concludes there are none. ASG appropriately raises this issue now because it noted venue deficiencies in its initial Motion [5] to Dismiss, stating, "the appropriate venue is in the S.D. Tex," Mem. [6] at 28 n.10, and this Court earmarked the issue for later consideration, Ord. [21] at 20 n.3. Accordingly, the Court will grant the Motion [70] to Transfer Venue to the Southern District of Texas on the basis of the first-to-file rule.[4]

[4] Under the first-to-file rule, the first-filed court determines "whether the second suit filed must be dismissed, stayed or transferred and consolidated." *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 920 (5th Cir. 1997). This Court will leave that post-transfer issue for the Southern District of Texas.

2. Venue-transfer is also warranted under 28 U.S.C. § 1404(a).

Alternatively, ASG argues that transfer is appropriate under 28 U.S.C. § 1404(a)'s grant of authority to district courts to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice," to any district where it "might have been brought." 28 U.S.C. § 1404(a). The Court considers the eight factors mentioned previously to decide whether to grant a § 1404(a) transfer motion, the first four of which are "private interest" factors, and the last four of which are "public interest" factors. *In re Volkswagen*, 545 F.3d at 315. Transfer is appropriate "even where a majority of factors are neutral," *TikTok*, 85 F.4th at 358, because it is an abuse of discretion to deny a transfer if "not a single relevant factor favors the [plaintiff's] chosen venue," *id.* (quoting *Volkswagen*, 545 F.3d at 318).

As to the private-interest factors, on this record, the Court is concerned about "the relative ease of access to sources of proof," "the availability of compulsory process to secure the attendance of witnesses," and "other practical problems that make trial of a case easy, expeditious and inexpensive," all of which appear to fare worse in the Southern District of Mississippi than in the Southern District of Texas. *See id.* (citation omitted). As ASG notes in its Memorandum [71]: (1) several non-party witnesses in this case, including Bisley, Riteks, and TMD employees, are in the Southern District of Texas in and around Houston, and are beyond this Court's subpoena power, Mem. [71] at 7; *see* Fed R. Civ. P. 45(c)(1)(A); (2) Manissero and Koebrick are beyond this Court's personal jurisdiction but are parties in the Texas Action, Mem. [71] at 7-8; *see* Ord. [21] at 20; and (3) witnesses have already

appeared or testified in Houston in the Texas Action, Mem. [71] at 7-8. Further, the Southern District of Texas "has the related action, the full record, and every relevant party; . . . without [a transfer], two courts will decide the same issues on dispositive motions within months of each other and [may] hold two trials." *Id.* at 8.

Plaintiffs do not directly rebut any of ASG's arguments on the private-interest factors, but instead advance that ASG has only identified categories of witnesses (e.g., Bisley, Riteks, and TMD employees), rather than particular witnesses, for whom transfer to the Southern District of Texas would be more convenient, and that such assertions are not sufficient to justify transfer. Mem. [108] at 13. But Plaintiffs cite no authority for that proposition. Plaintiffs then do the same thing they accuse ASG of doing, and claim that a category of witnesses, "GTS personnel," "may possess relevant information," and that the Southern District of Mississippi is more convenient for them than the Southern District of Texas. *Id.* at 14. Those assertions, unlike ASG's, are stated equivocally, and also do not have the factual support that ASG's contentions do: that several of these witnesses have already appeared in the Texas Action. Mem. [71] at 7-8; *see generally ASG Chem. Holdings*, No. 4:23-cv-04333 (S.D. Tex.). Plaintiffs thus fail to meaningfully argue against the private-interest factors that weigh in ASG's favor.

Plaintiffs also make no showing that ASG's § 1404(a) motion was not made with "reasonable promptness," i.e., that ASG delayed filing it as a "dilatory tactic" or to "prejudice[]" Plaintiffs. *Mohamed*, 90 F. Supp. 2d at 760. On the contrary, the pleadings only settled recently, on September 9, 2026, almost two years after this

case was removed to this Court, *see* Ord. [53]; Notice of Removal [1]; and the lengthy dispute over the pleadings was caused by *Plaintiffs'* repeated filing of shotgun allegations, not dilatory tactics by ASG, *see generally* Ord. [21] (noting Plaintiffs' shotgun allegations); Ord. [32] (same); Ord. [53] (same). The Court finds that three of the private-interest factors weigh in favor of granting the Motion [70].[5]

As to the public-interest factors, ASG submits that all are neutral, Mem. [71] at 8, whereas Plaintiffs assert that factors six and seven, that "the local interest in having localized interests decided at home" and "the familiarity of the forum with the law that will govern the case" favor of denying transfer, *see* Mem. [108] at 16-17. While it is true that one Plaintiff, GTS, is a Mississippi company and that some of the events in this case occurred in the Southern District of Mississippi, Plaintiffs do not argue that, or explain how, the Mississippi-based events predominate over the Texas-based events. And, given the foregoing analysis, virtually all of the factual substance underpinning this dispute concerns events and parties associated with non-party Bisley, which occurred or are located in the Southern District of Texas. Additionally, the Southern District of Texas, as a sister federal court within the Fifth Circuit, is more than competent to apply Mississippi tort law where necessary. On the whole, the Court finds that the public-interest § 1404(a) factors are neutral.[6]

---

[5] The third private-interest factor, "the cost of attendance for willing witnesses," *TikTok*, 85 F.4th at 358 (citation omitted), is not addressed by the parties and the Court finds that particular factor to be neutral. The other three private-interest factors weigh in favor of venue-transfer.

[6] Public-interest factors five, "the administrative difficulties flowing from court congestion," and eight, "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law," *TikTok*, 85 F.4th at 358 (citation omitted), go undiscussed by the parties. The Court finds that they are neutral, just as public-interest factors six and seven are.

The Court concludes that "the relative ease of access to sources of proof," "the availability of compulsory process to secure the attendance of witnesses," and "other practical problems that make trial of a case easy, expeditious and inexpensive," those being three of the eight § 1404(a) factors, weigh in favor of transferring the case. *See TikTok*, 85 F.4th at 358 (citation omitted). The rest are neutral. Because "not a single relevant factor favors the [plaintiffs'] chosen venue," *id.* (quoting *Volkswagen*, 545 F.3d at 318), Defendant ASG's Motion [70] to Transfer Venue to the Southern District of Texas under 28 U.S.C. § 1404(a) should be granted.

III. CONCLUSION

To the extent the Court has not addressed any of the parties' remaining arguments, it has considered them and determined that they would not alter the result.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant ASG Chemical Holdings, LLC's Motion [70] to Transfer Venue to the Southern District of Texas is **GRANTED**.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, this civil action is **TRANSFERRED** to the United States District Court for the Southern District of Texas, Houston Division.

**SO ORDERED**, this the 18th day of November, 2026.

s/ Halil Suleyman Ozerden
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE